Patrice L. Bishop (182256)
service@ssbla.com
**STULL, STULL & BRODY**
9430 W. Olympic Blvd., Suite 400
Beverly Hills, CA  90212
Tel:310-209-2468
Fax:310-209-2087

*Counsel for Plaintiff*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DON FOOSHEE, STACI BLACK, CASSANDRA PAYNE, BRUCE BODOFSKY, COURTNEY HILL, SABRINA BASHAM, EMILIO RODRIGUEZ, GARY MISBACH, GEORGE LETT, GLENDA DILLON and ERICA McCLEARY, individually and on behalf of all others similarly situated,<br><br>                           Plaintiffs,<br><br>          v.<br><br>INTEL CORPORATION,<br><br>                           Defendant. | Case No.: 5:18-cv-01461<br><br>**COMPLAINT**<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Don Fooshee, Staci Black, Cassandra Payne, Bruce Bodofsky, Courtney Hill, Sabrina Basham, Emilio Rodriguez, Gary Misbach, George Lett, Glenda Dillon and Erica McCleary ("Plaintiffs"), individually and on behalf of the Class defined below, allege the following against Intel Corporation ("Intel" or the "Company") based upon personal knowledge with respect to themselves and based upon or derived from, among other things, investigation of counsel and review of public documents as to all other matters:

<u>**NATURE OF THE ACTION**</u>

1.      Plaintiffs bring this consumer class action against Intel for its failure to disclose that a variety of Intel microprocessor chips manufactured over a two-decade period (the "Affected Processors"), which Intel sold as premium products possessing unmatched speed and technology, possessed a material defect (the "Defect") that causes computer failures and compromises the security of the device utilizing the Affected Processors (the "Affected Devices"). Repairing or "patching" the Affected Processors' security vulnerabilities, called "Spectre" and "Meltdown," requires extensive changes at the root levels of the operating system, which will dramatically reduce performance of the Affected Processors. The defective Affected Processors are unfit for their intended use and purpose. The Defect exists in the widely used Intel processors set forth in ¶ 20, n.1, *infra*, manufactured since at least 2008. Intel's CPU microprocessor chip is, and was, utilized in the majority of all desktop, laptop computers, and servers in the United States. The Defect, based on a material design failure, was first revealed on or about November 21, 2017, through published stories in the news media. On or about January 2, 2018, Intel revealed that patching this security vulnerability would lead to substantial degradation in CPU performance with the Affected Devices.

2.      The defective Affected Processors, which are present in a large number of computers, phones and other electronic devices, were intended to support the operating systems and communication of data in the Affected Devices, but instead significantly and negatively interfered with the Affected Devices' performance, including the slowing of the Affected Devices, causing random rebooting and exposing the Affected Devices to security breaches.

– 1 –

3.    As a result of Defendant's wrongful actions, Plaintiffs and members of the proposed class and sub-classes have been injured.

**JURISDICTION AND VENUE**

4.    Subject Matter Jurisdiction. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. There are more than 100 putative class members and at least some members of the proposed Class have different citizenship from Intel.

5.    Personal Jurisdiction. This Court has personal jurisdiction over Intel because Intel is incorporated under the laws of the State of California and is headquartered in Santa Clara, California.

6.    Venue. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Intel resides in this District and a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this District.

**THE PARTIES**

**Plaintiffs**

7.    Plaintiff Don Fooshee ("Fooshee") is a resident of the State of Texas. In or about July 2017 Fooshee purchased an Acer laptop computer and an Asus laptop computer with gaming boards for $1400 each. Both Fooshee's Acer and Asus laptop computers contained the Affected Processors and experienced a significant slowdown of speed in their operation as well as other operational issues that negatively affected their performance.

8.    Plaintiff Staci Black ("Black") is a resident of the State of California. In or about 2013 Black purchased an Asus laptop computer with an Intel core i5 processor, one of the defective Affected Processors, in Washington State. Black downloaded the "patch" made available by Intel and immediately thereafter lost all data on her laptop. Plaintiff was unable to restore the lost files. The computer after the download has experienced a significant slowdown of the speed in its operation as well as other operational issues that negatively affected the performance of her Asus laptop computer.

COMPLAINT
Case No. 5:18-cv-01461

9.    Emilio Rodriguez ("Rodriguez") is a resident of the State of New Jersey. In or about April 2015 Plaintiff Rodriguez purchased, among other pieces of hardware and software for gaming and personal use, an Intel Affected Processor, a Core i5-4690K Devil's Canyon Quad-Core 3.5 GHz GHz LGA 1150 88W BX80646I54690K Desktop Processor Intel HD Graphics. Plaintiff Rodriguez has experienced a significant slowdown of the speed in its operation as well as other operational issues that negatively affected the performance of his computer equipment.

10.    Cassandra Payne ("Payne") is a resident of the State of Michigan. In or about 2014 Plaintiff Payne purchased a Dell computer advertised to contain an Intel i3 Affected Processor for approximately $800. The computer crashed and became inoperable within a period of time after purchase and has been unusable.

11.    Plaintiff Bruce Bodofsky ("Bodofsky") is a resident of the State of Delaware.   In or about the Fall of 2016 Plaintiff Bodofsky purchased a Lenovo desktop computer with the Affected Processor which would automatically do Windows updates. Upon doing the updates, which included the patch, the computer experienced a significant slowdown of the speed in its operation as well as other operational issues that negatively affected the performance of the Lenovo computer. In addition, Plaintiff Bodofsky purchased a computer in or about 2014 which contained an Intel Affected Processor, the Core i3, which has significantly slowed down after doing the patch update.

12.    Plaintiff Courtney Hill ("Hill") is a resident of the State of North Carolina. Plaintiff Hill purchase a Dell laptop computer with an Intel Affected Processor in or about 2014. Because of security issues which occurred with the Dell computer, Plaintiff Hill experienced hacking of his data on multiple occasions and has had the data on his Dell computer locked. In addition, Plaintiff Hill has been required to continually reboot his computer to have it become operational.

13.    Plaintiff Sabrina Basham ("Basham") is a resident of the State of Georgia. Plaintiff Basham purchased two Dell computers, including a Dell Inspiron II 3168 with a Pentium Processor N Series Affected Processor and a desktop computer which included an Intel Affected Processor. Due to the defect, the two Dell computers crashed and were prevented from completing updates. Each time Plaintiff Basham attempted to do an update the computer would either crash or

– 3 –

1   run unusually slow and rewrite a system restore to be restored to its condition prior to the updates

2   in order to run at normal speed. In addition, as a result of the defect, Plaintiff Basham had

3   information from her computer compromised and her financial information and/or credit card

4   information hacked.

5          14.    Plaintiff Gary Misbach ("Misbach") is a resident of the State of Washington.

6   Plaintiff Misbach has a Super Micro server (with 2 hard drive units installed), purchased in or

7   about mid-2017, which includes two Intel Xeon Affected Processors. The computer did automatic

8   updates and as a result of the defect in the Intel Affected Processors, Plaintiff Misbach has

9   experienced a significant slowdown of the speed in its operation as well as other operational issues

10  that negatively affected the performance of the server.

11         15.    Plaintiff George Lett ("Lett") is a resident of the State of Virginia.  Plaintiff Lett

12  owns two computers with Intel Core i5 and i7 CPU Affected Processors purchased on or about

13  December 2016 and June 2017, respectively. As a result of the Intel Affected Processors defect,

14  Plaintiff Lett did the updates for the patch approximately one month after Intel made the patch

15  available to consumers. However, after doing the Intel patches, the computers began to run

16  significantly slower in speed of operation as well as developing other operational issues that

17  negatively affected the performance of Plaintiff's computers.

18         16.    Plaintiff Glenda Dillon ("Dillion") is a resident of the State of Florida. Plaintiff

19  Dillon purchased two computers which contained defective Intel Affected Processors. Plaintiff

20  began to experience problems after updating one of the computers with the patch, resulting in the

21  computer system running perceptively slower than prior to the update.

22         17.    Plaintiff Erica McCleary ("McCleary") is a resident of the State of California.

23  Plaintiff McCleary purchased various computers including a Dell computer purchased in 2017, an

24  ASUS X55L computer, ACER computer and HP computer which all contained the Affected

25  Processors. After doing the updates, the Asus and ACER and HP all stopped working properly,

26  experienced slowdowns in their operation and other problems.

27

28

– 4 –

**Defendant**

18.    Defendant Intel is a corporation that was created under the laws of the State of California, is currently incorporated in Delaware, and has its principal place of business in Santa Clara, California. According to Intel's public filings, the Company is a "world leader in the design and manufacturing of essential products and technologies that power the cloud and an increasingly smart, connected world. Intel delivers computer, networking, and communications platforms to a broad set of customers including original equipment manufacturers (OEMs), original design manufacturers (ODMs), cloud and communications service providers, as well as industrial, communications and automotive equipment manufacturers. [Intel is] expanding the boundaries of technology through our relentless pursuit of Moore's Law and computing breakthroughs that make amazing experiences possible."

## STATEMENT OF FACTS

### A.    Background on Intel's Affected Processors and the Meltdown and Spectre Vulnerabilities

19.    Intel has long touted the security of its processors, including its most recent 8th Generation Core Processors, advertising a "critical layer of protection to make password logins, browsing, and online payments safe and simple." Intel has described its biometric systems as having "rock-solid security that's fast and hassle free." The security of Intel's ubiquitous processors is vital not just to consumers, but to almost every facet of modern commercial life.

20.    Security vulnerabilities called "Meltdown" and "Spectre" affect all Intel chips released after 1995, with the exception of the company's Itanium server chips and Atom processors before 2013. The vulnerabilities affect more than 730 varieties of Intel server/workstation processors, 443 varieties of desktop processors, 583 varieties of mobile processors, and 51 varieties of mobile Systems on a Chip.[1] Millions of computers and devices contain the Affected Processors.

---

[1] The Affected Processors include: Intel Core i3 processor (4nm and 32nm); Intel Core i5 processor (45nm and 32nm); Intel Core i7 processor (45nm and 32nm); Intel Core M processor family (45nm and 32nm); 2nd generation Intel Core processors; 3rd generation Intel Core processors; 4th generation Intel Core processors; 5th generation Intel Core processors; 6th generation Intel Core processors; 7th generation Intel

21.     Both the Meltdown and Spectre vulnerabilities arise from the Affected Processors' performance-boosting processes of speculative execution and caching. Speculative execution increases CPU performance by executing anticipated computations before instructions to do so are provided. Caching involves the use of a small, high-speed data storage cache on a CPU chip. Because cached data does not have to travel between the CPU to external storage, it can be accessed much faster than non-cache storage. The data for speculative execution is often stored on the CPU's cache.

22.     A series of exploits can take advantage of speculative execution data stored in the cache to deduce the underlying data stored therein, putting at risk the user's sensitive information stored in the protected kernel memory, like passwords, photos, emails, and any data stored in the PC.

23.     Meltdown exploits speculative execution and caching to grant a cyber intruder access to programs and information from all over the machine, including programs and information protected by security measures. Spectre, of which there are two variants, reveals only data about the program being exploited by the intruder.

24.     All devices with the Affected Processors are at risk from the Meltdown and Spectre vulnerabilities, and the vulnerabilities are generally of concern to processor companies like Intel, AMD, and ARM, operating system companies like Apple, Microsoft, and Google, and cloud-service providers like Amazon.

Core processors; 8th generation Intel Core processors; Intel Core X-series Processor Family for Intel X99 platforms; Intel Core X-series Processor Family for Intel X299 platforms; Intel Xeon processor 3400 series; Intel Xeon processor 3600 series; Intel Xeon processor 5500 series; Intel Xeon processor 5600 series; Intel Xeon processor 6500 series; Intel Xeon processor 7500 series; Intel Xeon Processor E3 Family; Intel Xeon Processor E3 v2 Family; Intel Xeon Processor E3 v3 Family; Intel Xeon Processor E3 v4 Family; Intel Xeon Processor E3 v5 Family; Intel Xeon Processor E3 v6 Family; Intel Xeon Processor E5 Family; Intel Xeon Processor E5 v2 Family; Intel Xeon Processor E5 v3 Family; Intel Xeon Processor E5 v4 Family; Intel Xeon Processor E7 Family; Intel Xeon Processor E7 v2 Family; Intel Xeon Processor E7 v3 Family; Intel Xeon Processor E7 v4 Family; Intel Xeon Processor Scalable Family; Intel Xeon Phi Processor 3200, 5200, 7200 Series; Intel Atom Processor C Series; Intel Atom Processor E Series; Intel Atom Processor A Series; Intel Atom Processor x3 Series; Intel Atom Processor Z Series; Intel Celeron Processor J Series; Intel Celeron Processor N Series; Intel Pentium Processor J Series; and Intel Pentium Processor N Series.

– 6 –

25.    Remediation of the Meltdown virus through a software patch is possible but entails a penalty to computational performance that, in aggregate, amounts to billions of dollars in reduced computational performance.

26.    Spectre is a series of vulnerabilities related to speculative execution. Unlike Meltdown, Spectre cannot be patched.

27.    In June 2017 security researchers notified Intel and other companies regarding Meltdown and Spectre. Intel did not disclose the Meltdown vulnerability to the public or cyber security officials.

28.    On January 3, 2018, Intel disclosed the Meltdown and Spectre vulnerabilities to the public and US Computer Emergency Readiness Team, which issues cyber security warnings to the public and the private sector. Intel's disclosure came after the flaws were independently identified by three teams: Google's Project Zero, Cyberus Technology, and the Graz University of Technology.

29.    On January 4, 2018, Intel issued software and firmware patches that covered all Affected Devices, including personal computers and servers, and released this statement:

> Intel continues to believe that the performance impact of these updates is highly workload-dependent and, for the average computer user, should not be significant and will be mitigated over time. While on some discrete workloads the performance impact from the software updates may initially be higher, additional post-deployment identification, testing and improvement of the software updates should mitigate that impact.

**B.    Impact on Consumers**

30.    Intel's patches have affected its operating systems and Intel chip combinations in the following way:

- With Windows 10 on newer silicon (2016-era PCs with Skylake, Kabylake or newer CPU), benchmarks show single digit slowdowns, but we don't expect most users to notice a change because these percentages are reflected in milliseconds.

- With Windows 10 on older silicon (2015-era PCs with Haswell or older CPU), some benchmarks show more significant slowdowns, and *we expect that some users will notice a decrease in system performance*.

– 7 –

- With Windows 8 and Windows 7 on older silicon (2015-era PCs with Haswell or older CPU), *we expect most users to notice a decrease in system performance*.

\* \* \*

- Windows server on any silicon, especially in any IO-intensive application, shows a more significant performance impact when you enable the mitigations to isolate untrusted code within a Windows Server instance. This is why you want to be careful to evaluate the risk of untrusted code for each Windows Server instance, and *balance the security versus performance tradeoff for your environment*.

https://hothardware.com/news/microsoft-windows-10-pcs-haswell-intel-cpus-significant-slow

downs-post-spectre-patch (emphasis added).

31.     Red Hat, a software company, noted the impact of software patches as having between a one to twenty percent performance reduction using industry-standard benchmarks.

32.     The Register, one of the first tech blogs to report on the security vulnerability, further detailed the impact of software patches on the following companies:

> Epic Games on Friday explained the cause of recent login and stability issues experienced by its players, noting: "All of our cloud services are affected by updates required to mitigate the Meltdown vulnerability."

33.     Discussions on the mailing list for Lustre, a parallel distributed filesystem, described slowdowns ranging from ten to forty-five percent for certain IO intensive applications.

34.     Via Twitter, Francis Wolinski, a data scientist with Paris-based Blueprint Strategy, noted that Python slowed significantly (about thirty-seven percent) after applying the Meltdown patch for Windows 7.

35.     Also via Twitter, Ian Chan, director of engineering for analytics firm Branch Metrics, described CPU utilization increases of five to twenty percent after the Meltdown patch was applied to the AWS EC2 hypervisor handling its Kafka instances.

36.     On Reddit, a Monero coin miner reported a slowdown of about forty-five percent after applying the Meltdown patch. On that thread, another person cited a hash rate decrease of ten to fifteen percent.

37.     Amazon customers have sent The Register several screenshots of CPU utilization showing spikes similar to those that have been publicly discussed. Before the weekend, Amazon

– 8 –

confirmed the updates will ding AWS virtual-machine performance to some degree, albeit with no "meaningful performance impact for most customer workloads" expected, apparently.

38.    The Next Platform, a tech blog cited in The Register, conservatively estimated the costs of the Meltdown patch to the server business alone to be $10 billion and noted that since Intel first learned about the security exploit in June 2017, but did not disclose the exploit to the public until January 3, 2018, the chip maker had an unfair advantage over smaller tech companies:

> The unfair thing is that the chip makers, the hyperscalers, and the cloud builders all knew well ahead of the rest of the world, and that gave them an unfair advantage choosing their next generation of processors. Knowing the impacts before launch, and having access to Intel Xeons SPs, AMD Epycs, IBM Power9s, Qualcomm Centriq 2400s, and (maybe) Cavium ThunderX2s ahead of everyone else, they knew the probably performance hit and could size their machines and ask their prices accordingly. Now, everyone else has to play catch up and do the math.
>
> We have to make some assumptions to make a point here. So first, let's assume that the average performance hit is somewhere around 10 percent for a server based on microbenchmarks, and that the heavily virtualized environment in most enterprise datacenters washes out against the lower impact expected for enterprise workloads. Call it something on the order of $60 billion a year in worldwide system sales. So the impact is $6 billion a year in the value of the computing that is being lost, at the grossest, highest denominator level. For modern machines, this is like giving up two, four, or maybe even six cores out of the machine, if the performance hit pans out as we expect on existing machines across a wide variety of workloads. Add this up over the three or four generations of servers sitting out there in the 40 million or so servers in the world, and maybe the hit is more to the tune of $25 billion without taking into account the depreciated value of the installed base. Even if you do, it is still probably north of $10 billion in damages.

39.    Intel provided false and misleading information regarding the impact of its patches for Meltdown, which resulted in noticeable drops of CPU performance for customers and companies using older chipsets and operating systems.

40.    The importance of Intel's relationship to storing and transmitting secure and accurate data without corruption was recently underscored by Intel's Chief Executive Officer, Brian M. Krzanich, who stated in his letter to the Company's shareholders in Intel's 2016 10-K filed with the U.S. Securities & Exchange Commission:

This data revolution is a big opportunity for Intel because we provide essential technologies for processing, analyzing, storing, and sharing data. Data fuels our virtuous cycle of growth. It drives the continuing build-out of the cloud and the transformation of networks, and enables amazing new computing experiences like artificial intelligence, autonomous driving, and merged reality. The growth of data and new data-intensive markets adds billions to Intel's total addressable market.

## CLASS ALLEGATIONS

41.    Plaintiffs seek relief on behalf of themselves and as representatives of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4), Plaintiffs seek certification of a Nationwide class defined as follows:

All persons who (1) own or have owned an Affected Device that used one or more of the defective Intel Affected Processors or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of the defective Intel Affected Processors, who purchased or acquired their Affected Devices in the United States and/or while residing in the United States (the "Nationwide Class").

42.    Pursuant to Fed. R. Civ. P. 23, and in the alternative to claims asserted on behalf of the Nationwide Class, Plaintiffs assert claims under the laws of the individual States, and on behalf of separate statewide subclasses, defined as follows:

All persons who (1) own or have owned an Affected Device that used one or more of the defective Intel Affected Processors or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of the defective Intel Affected Processors, who purchased or acquired their Affected Devices in Texas and/or while residing in Texas (the "Texas Subclass").

All persons who (1) own or have owned an Affected Device that used one or more of the defective Intel Affected Processors or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of the defective Intel Affected Processors, who purchased or acquired their Affected Devices in the State of Washington (the "Washington Subclass").

All persons who (1) own or have owned an Affected Device that used one or more of the defective Intel Affected Processors or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of the defective Intel Affected Processors, who purchased or acquired their Affected Devices in California and/or while residing in California (the "California Subclass").

– 10 –

COMPLAINT
Case No. 5:18-cv-01461

All persons who (1) own or have owned an Affected Device that used one or more of the defective Intel Affected Processors or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of the defective Intel Affected Processors, who purchased or acquired their Affected Devices in North Carolina and/or while residing in North Carolina (the "North Carolina Subclass").

All persons who (1) own or have owned an Affected Device that used one or more of the defective Intel Affected Processors or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of the defective Intel Affected Processors, who purchased or acquired their Affected Devices in Delaware and/or while residing in Delaware (the "Delaware Subclass").

All persons who (1) own or have owned an Affected Device that used one or more of the defective Intel Affected Processors or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of the defective Intel Affected Processors, who purchased or acquired their Affected Devices in Georgia and/or while residing in Georgia (the "Georgia Subclass").

All persons who (1) own or have owned an Affected Device that used one or more of the defective Intel Affected Processors or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of the defective Intel Affected Processors, who purchased or acquired their Affected Devices in New Jersey and/or while residing in New Jersey (the "New Jersey Subclass").

All persons who (1) own or have owned an Affected Device that used one or more of the defective Intel Affected Processors or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of the defective Intel Affected Processors, who purchased or acquired their Affected Devices in Michigan and/or while residing in Michigan (the "Michigan Subclass").

All persons who (1) own or have owned an Affected Device that used one or more of the defective Intel Affected Processors or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of the defective Intel Affected Processors, who purchased or acquired their Affected Devices in Virginia and/or while residing in Virginia (the "Virginia Subclass").

All persons who (1) own or have owned an Affected Device that used one or more of the defective Intel Affected Processors or (2) have owned an Affected Device and have replaced it with a new device because it was experiencing performance problems as a result of the defective Intel Affected Processors, who purchased or acquired their Affected Devices in Florida and/or while residing in Florida (the "Florida Subclass").

– 11 –

43.     Excluded from the Class and/or each of the above Subclasses are any of Intel's officers, directors and board members; all persons who make a timely election to be excluded from the Class and/or Subclasses; and the judges to whom this case is assigned and their immediate family.

44.     Plaintiffs hereby reserve the right to amend or modify the Class and Subclasses' definitions with greater specificity or division after having had an opportunity to conduct discovery.

45.     The proposed Class and each of the proposed Subclasses meet the criteria for certification under Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3) and (c)(4).

46.     Numerosity. Fed. R. Civ. P. 23(a)(1). Consistent with Rule 23(a)(1), the members of the Class and/or Subclasses are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class and/or Subclass members is unknown to Plaintiffs at this time, Plaintiffs believe the proposed Class and Subclasses comprise millions of members. Class and Subclass members may be identified through objective means. Class and Subclass members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

47.     Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). Consistent with Fed. R. Civ. P. 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class and Subclass members. The common questions include:

        a.    Whether Intel failed to disclose that its defective Affected Processors caused loss of data, slowdowns, other performance issues and potential security and data breach issues in Affected Devices;

        b.    Whether Intel interfered or otherwise lowered the use or value of the Affected Devices;

        c.    Whether Intel charged a premium price for a product alleged to provide superior performance and security as compared to competitive products

– 12 –

when, in fact, the defective Intel Affected Processors were inferior and had security vulnerabilities not possessed by competitive product which sold for lesser amounts.

d.   Whether Intel is subject to liability for fraudulently concealing material facts from Plaintiffs and other members of the proposed classes;

e.   Whether Intel's conduct constituted deceptive trade practices under state law;

f.   Whether Intel was unjustly enriched as a result of its fraudulent conduct, such that it would be inequitable for Intel to retain benefits conferred upon it by Plaintiffs and other members of the proposed Class and/or Subclasses;

g.   Whether Plaintiffs and the other members of the proposed Class and/or Subclasses were injured and suffered damages or other acceptable losses because of Intel's fraudulent behavior; and,

h.   Whether Plaintiffs and other members of the proposed Class and/or Subclasses are entitled to relief.

48.   **Typicality.** Fed. R. Civ. P. 23(a)(3). Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiffs' claims are typical of those of the other Class and/or Subclass members. Plaintiffs' damages and injuries are akin to the other Class and/or Subclass members and Plaintiffs seek relief consistent with the relief of the Class and/or Subclasses.

49.   **Adequacy.** Fed. R. Civ. P. 23(a)(4). Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiffs are adequate representatives of the Class and/or Subclasses because Plaintiffs are members of the Class and Subclasses and are committed to pursuing this matter against Intel to obtain relief for the Class and/or Subclasses. Plaintiffs have no conflict of interest with the Class and/or Subclasses. Plaintiffs' Counsel are competent and experienced in litigating class actions, including privacy litigation. Plaintiffs intend to vigorously prosecute this case and will fairly and adequately protect the Class' and/or Subclasses' interests.

50.   **Superiority.** Fed. R. Civ. P. 23(b)(3). Consistent with Fed. R. Civ. P23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this

– 13 –

controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The quintessential purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs may not be sufficient to justify individual litigation. Here, the damages suffered by Plaintiffs and the other members of the Class and/or Subclasses are relatively small compared to the burden and expense required to individually litigate their claims against Intel, and thus, individual litigation to redress Intel's wrongful conduct would be impracticable. Individual litigation by each Class and/or Subclass member would also strain the court system. Individual litigation creates the potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

51.     Injunctive and Declaratory Relief. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c). Defendant, through its uniform conduct, has acted or refused to act on grounds generally applicable to the Class and/or Subclasses as a whole, making injunctive and declaratory relief appropriate to the Class and/or Subclasses as a whole.

52.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

53.     Finally, all members of the proposed Class and/or Subclasses are readily ascertainable by records maintained by Intel. Using this information, the members of the Class and/or Subclasses can be identified and their contact information ascertained for purposes of providing notice to the Class and/or Subclasses.

## COUNT I

### FRAUDULENT CONCEALMENT
**(On Behalf of Plaintiffs and the Nationwide Class, or,
Alternatively, Plaintiffs and the State Subclasses)**

54.     Plaintiffs incorporate and re-allege the allegations contained in the preceding paragraphs as if fully set forth herein.

– 14 –

55.     Prior to and at the time that Plaintiffs and members of the proposed Class and Subclasses decided to purchase their Affected Devices Intel knew and/or had possession of the information revealing to it that its defective Affected Processors would cause loss of data, slowdowns, other performance issues and potential security and data breach issues in Affected Devices.

56.     At all relevant times herein Intel, which had a duty to disclose the above information, intentionally concealed and/or failed to disclose the aforementioned material facts to the Plaintiffs and members of the proposed Class and Subclasses.

57.     At all relevant times, Intel made representations as to the superior performance of its Affected Processors as compared to competitors' competitive products and thereby charged a price premium for its Affected Processors.

58.     Plaintiffs and members of the proposed Class and Subclasses did in fact rely on Intel's concealment and lack of material disclosure in choosing to purchase and/or install the defective Intel Affected Processors into their Affected Devices

59.     Had Intel disclosed that the product was defective, Plaintiffs would not have purchased the defective Intel Affected Processors or products with the defective microprocessor chips.

60.     As a direct and proximate cause of Intel's material omissions, Plaintiffs and members of the proposed Class and Subclasses suffered ascertainable losses consisting of the purchase price of new Affected Devices, the cost of retrieval of data, the time to remedy the issues created and the price premium paid to Intel.

## COUNT II

### BREACH OF IMPLIED CONTRACT
**(On Behalf of Plaintiffs and the Nationwide Class, or,
Alternatively, Plaintiffs and the State Subclasses)**

61.     Plaintiffs incorporate and re-allege the allegations contained in the preceding paragraphs as if fully set forth herein.

62.     Plaintiffs' and members of the proposed Class and Subclasses entered into implied contracts with Intel, when they purchased their Affected Devices, to which Intel agreed to not

– 15 –

purposefully interfere with Plaintiffs and members of the proposed Class and Subclasses' usage or speed.

63.    Intel represented the Affected Processors it supplied to be of the highest quality, to be as secure as competitive Affected Processors and to be of a higher performance standard than competitors, and as illustrative of this alleged fact, Intel brand Affected Processors, when included with an Affected Device, were listed as one of the beneficial features of the Affected Devices.

64.    Plaintiffs and members of the proposed Class and Subclasses fully performed their obligations under the implied contracts with Intel.

65.    Defendant breached the implied contracts it had made with the Plaintiffs and members of the proposed Class and Subclasses by manufacturing, distributing, marketing, producing and installing Affected Processors into the Affected Devices which created security vulnerabilities and required patches which Intel has now admitted will reduce the performance and operation of the Affected Devices and slow them down.

66.    The damages to Plaintiffs and members of the proposed Class and Subclasses as described herein were the direct and proximate result of the Defendants' breaches of these implied contracts.

### COUNT III

**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW,**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(Asserted by the California Subclass)**

67.    Plaintiff Erica McCleary ("Plaintiff," for purposes of this Count), individually and on behalf of the other California Subclass Members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

68.    Intel's acts and practices, as alleged in this Complaint, constitute unfair, unlawful and fraudulent business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq.

69.    Intel has engaged in an unfair business practice with respect to the products provided to Plaintiff and the California Subclass, including, but not limited to, its failure to

disclose that its defective Affected Processors would cause loss of data, slowdowns, other performance issues and potential security and data breach issues in Affected Devices.

70.     Intel's business practices are unscrupulous, unethical, and substantially injurious to consumers. There is no legitimate business reason for Intel's business practice such that the utility of its business practice outweighs the harm to consumers. Furthermore, Intel's business practice undermines this State's fundamental policy against unfair and sharp business practices that are likely to deceive or mislead consumers, and which undercut trust and fair competition in the consumer marketplace.

71.     Plaintiff and California Subclass members relied upon Intel's representations and material omissions in purchasing Intel Affected Processors and/or Affected Devices with Intel Affected Processors. Had Plaintiff and California Subclass members known of the truth and of the concealed material information, they would not have purchased Intel Affected Processors or Affected Devices that contained Intel Affected Processors which damaged their Affected Devices and/or would have purchased devices with AMD or other competitive products for a lesser amount. In addition, because of the patches required which slow down the device's performance, Plaintiffs will suffer current and future harm as a result of the Affected Devices' respective conditions.

72.     Plaintiff also has standing to challenge Defendants' unfair, unlawful and fraudulent business practices on behalf of the public pursuant to California Business and Professions Code § 17204, since, as a result of such practices, she has suffered injury in fact and lost money or property in the form of reduced value of the Affected Devices.

73.     On behalf of the proposed class, Plaintiff hereby seeks money damages and restitution in an amount to be determined at trial.

74.     On behalf of the proposed class, Plaintiff also hereby seeks entry of appropriate equitable relief pursuant to California Business & Professions Code § 17203, including an injunction prohibiting Defendant from engaging in the same or similar unfair business practices in the future, civil penalties, restitution of money that may have been acquired by Defendants' unfair

– 17 –

1   business practices, and attorney's fees and costs of litigation. The entry of injunctive relief is of

2   particular importance, and necessary to secure a fair consumer marketplace.

3                                           **COUNT IV**

4                    **VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT,**
                                    **Cal. Civ. Code § 1750, *et seq.***
5                              **(Asserted by the California Subclass)**

6          75.     Plaintiff Erica McCleary ("Plaintiff," for purposes of this Count), individually and

7   on behalf of the other California Subclass members, repeats and alleges the allegations contained

8   in the preceding paragraphs as if fully set forth herein.

9          76.     The Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, et seq. ("CLRA") is

10  a comprehensive statutory scheme that prohibits deceptive practices in connection with the

11  conduct of businesses providing goods, property or services to consumers primarily for personal,

12  family, or household use.

13         77.     Intel is a "person" as defined by Civil Code § 1761(c) and it provides "goods"

14  within the meaning of Civil code section 1761(a) and 1770.

15         78.     Plaintiff and California Subclass members are "consumers" within the meaning of

16  Civil Code § 1761(d).

17         79.     Intel's sales of goods to Plaintiff and California Subclass members constitute

18  "transactions" which were "intended to result or which result[ed]" in the sale of goods to

19  consumers within the meaning of Civil Code §1761 (e).

20         80.     Plaintiff has standing to pursue this claim as she has suffered injury in fact and has

21  lost money as a result of Intel's actions as set forth herein.

22         81.     Intel operating in California has violated the CLRA by engaging in unlawful, unfair

23  and deceptive practices as defined in Civil Code § 1770 with respect to the products provided to

24  Plaintiff and the California Subclass, including, but not limited to, its failure to disclose that it was

25  selling a product which created security vulnerabilities and affected the performance and speed of

26  the Affected Devices.

27         82.     The above unfair and deceptive practices and acts by Intel were immoral, unethical,

28  oppressive, and unscrupulous. These acts caused substantial injury to Plaintiff and California

                                            – 18 –

Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

83.    Intel knew or should have known that its Affected Processors were defective, would affect the performance and operation of the Affected Devices and that the defect and/or the cure (in the form of a patch) would slow down the performance of the Affected Devices and that the defective Intel Affected Processors were not as secure and would not perform to the same degree as those sold by its competitors.

84.    Plaintiff and California Subclass members relied upon Intel's misrepresentations and material omissions in purchasing Intel Affected Processors and/or Affected Devices with Intel Affected Processors. Had Plaintiff and California Subclass members known of the truth and of the concealed material information, they would not have purchased Intel Affected Processors or Affected Devices that contained Intel Affected Processors which have damaged their Affected Devices and/or would have purchased devices with AMD or other competitive products for a lesser amount.

85.    As a result of Intel's acts and practices alleged herein, Plaintiff and California Subclass members suffered actual damages.

86.    Plaintiff and California Subclass members are entitled to equitable relief as the damages incurred could require Plaintiff and other California Subclass members to make alterations and/or purchase new devices at their cost.

87.    On March 6, 2018, Plaintiff sent a pre-suit demand letter to Intel by Certified Mail, Return Receipt Requested, providing it with written notice of its alleged violations of the CLRA pursuant to California Civil Code section 1782(a) and requested that Defendant correct or agree to correct the violations enumerated and reimburse Plaintiff and the class for any damages suffered. If Defendant fails to do so, Plaintiff McCleary intends to amend the complaint as of right (or otherwise seek leave to amend the complaint) to include compensatory, monetary damages and punitive damages, in addition to the injunctive and equitable relief that Plaintiff seeks now.

– 19 –

1

## COUNT V

2

**WASHINGTON CONSUMER PROTECTION ACT,**
**Wash. Rev. Code Ann. §§ 19.86.020, *et seq*.**
**(Asserted by the Washington Subclass)**

3

4      88.      Plaintiffs Staci Black and Gary Misbach ("Plaintiffs," for purposes of this Count),

5 individually and on behalf of the other Washington Subclass members, repeat and allege the

6 allegations contained in the preceding paragraphs as if fully set forth herein.

7      89.      Intel operating in Washington engaged in deceptive, unfair, and unlawful trade acts

8 or practices in the conduct of trade or commerce, in violation of Wash. Rev. Code Ann. §

9 19.86.020, including but not limited to Intel's representations and material omissions in with

10 regard to the quality, performance and security of the defective Intel Affected Processors and/or

11 Affected Devices with Intel Affected Processors. Had Plaintiffs and Washington Subclass

12 members known of the truth and of the concealed material information, they would not have

13 purchased Intel Affected Processors or Affected Devices that contained Intel Affected Processors

14 which have damaged their Affected Devices and/or would have purchased devices with AMD or

15 other competitive products for a lesser amount.

16      90.      As a direct and proximate result of Intel's deceptive trade practices, Washington

17 Subclass members suffered injury and/or damages.

18      91.      The above unfair and deceptive practices and acts by Intel were immoral, unethical,

19 oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs and Washington

20 Subclass members that they could not reasonably avoid; this substantial injury outweighed any

21 benefits to consumers or to competition.

22      92.      Intel knew or should have known that its Affected Processors were defective,

23 would affect the performance and operation of the Affected Devices and that the defect and/or the

24 cure (in the form of a patch) would slow down the performance of the Affected Devices and that

25 the defective Intel Affected Processors were not as secure and would not perform to the same

26 degree as those sold by its competitors. Intel's actions in engaging in the above-named unfair

27 practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with

28 respect to the rights of members of the Washington Subclass.

93.     Plaintiffs and Washington Subclass members seek relief under Wash. Rev. Code Ann. § 19.86.090, including, but not limited to, actual damages, treble damages, injunctive relief, and attorneys' fees and costs.

## COUNT VI

**TEXAS DECEPTIVE TRADE PRACTICES ACT,**
**Tex. Bus. and Comm. Code § 17.41, *et seq*.**
**(Asserted by the Texas Subclass)**

94.     Plaintiff Don Fooshee ("Plaintiff," for purposes of this Count), individually and on behalf of the other Texas Subclass members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

95.     Plaintiff Fooshee asserts this count on behalf of himself and members of the Texas Subclass.

96.     Plaintiff and the Texas Subclass members are persons and consumers within the context of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. and Comm. Code §§ 17.41, *et seq*. (hereinafter "TDTPA") who purchased the defective microprocessor Affected Processors and/or the Affected Vehicles for personal, family or household use, specifically § 17.45(3) and (4).

97.     The Defendant is a "person" within the context of TDTPA § 17.45(3) who sells goods within the context of TDTPA § 17.45(1).

98.     The sale of the Affected Devices and/or the defective Intel Affected Processors in Texas constitutes trade and commerce of consumer goods affecting the people of the state of Texas within the context of TDTPA § 17.45(6).

99.     The Defendant knowingly and intentionally violated TDTPA § 17.46(5) by representing the defective Intel Affected Processors, including those included in the Affected Devices, have characteristics, uses, benefits and/or quantities which they do not possess.

100.    The Defendant violated TDTPA § 17.46(7) by representing defective Intel Affected Processors, including those included in the Affected Devices, are of a particular standard, quality, or grade, when they are not.

– 21 –

101.    The Defendant violated TDTPA § 17.46(24) by deception, fraud, false pretense, false premise, misrepresentation, knowing concealment, suppression, and/or omission of material facts concerning the defective Affected Processors with the intent to deceive Plaintiff and the Texas Subclass members.

102.    At the time Plaintiff purchased his Affected Devices and defective Intel Affected Processors, the Defendant knew or should have known that the Affected Processors were defective, posed a material security risk, would affect the performance and operation of the Affected Devices including the need for the patch and that said Affected Processors would not perform as competitive chips.

103.    The Defendant committed unfair and deceptive acts in the course of trade and commerce within the context of the TDTPA as described in this complaint in violation of TDTPA § 17.46.

104.    The Defendant committed unconscionable, deceptive and unfair trade practices, including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the defective Intel Affected Processors, including those included in the Affected Devices, in connection with the sale and/or advertisement of same to the Plaintiff and the Texas Subclass members.

105.    The Defendant fraudulently, intentionally, negligently, and/or recklessly misrepresented to Plaintiff and the Texas Subclass members the quality, performance, security and speed of the Affected Processors.

106.    The Defendant fraudulently, intentionally, negligently and/or recklessly misrepresented to Plaintiff and the Texas Subclass members the characteristics of defective Affected Processors with respect to materials, manufacture, performance, security, design and speed. The Defendant extensively advertised that the defective Intel Affected Processors were superior in design, performance, speed and security and extolled the qualities of said Affected Processors including superior materials, workmanship, design, manufacture, security, durability, reliability and performance. In fact, the Intel Affected Processors contained a known defect as described in this complaint that caused said Affected Processors to create a security risk to have a

– 22 –

vulnerability that could be exploited by hackers, to result in a slowdown and degradation of performance and quality of the Affected Devices.

107.    The Defendant intended that Plaintiff and the Texas Subclass members would, in the course of their decision to expend monies in purchasing and repairing the Affected Devices, reasonably rely upon misrepresentations, misleading characterizations and material omissions concerning the quality of defective Intel Affected Processors with respect to materials, manufacture, performance, security, design and speed.

108.    The Defendant further violated the TDTPA by failing to inform prospective class purchasers that the Defendant had not properly tested the design or security of the defective Affected Processors, including but not limited to their predisposition to hacking.

109.    The Defendant committed unfair and deceptive business trade act practices as described in this complaint. The Defendant repeatedly violated the TDTPA on multiple occasions with their continuous course of conduct, including omissions of material fact and misrepresentations concerning inter alia, the causes of the failures of the Affected Devices owned by Plaintiff and the Texas Subclass members.

110.    As a proximate and direct result of the Defendant's unfair and deceptive business trade practices, Plaintiff and the Texas Subclass members purchased defective Affected Processors and/or Affected Devices with said chips and sustained an ascertainable loss and financial harm.

111.    The conduct of Defendant offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable and substantial injury to class members (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

112.    Plaintiff Fooshee and the Texas Subclass members provided notice pursuant to TDTPA § 17.505 to Defendants via certified mail, return receipt requested on March 6, 2018. If Defendant fails to provide the requested relief within sixty (60) days of the date thereof, it is Plaintiff's intention to amend the Complaint to demonstrate that further tolling of this claim shall end and the TDTPA claim go forward.

COMPLAINT
Case No. 5:18-cv-01461

113.    Plaintiff and the Texas Subclass members demand judgment against Defendant Intel for restitution, disgorgement, statutory and actual monetary damages including multiple damages, interest, costs, attorneys' fees and injunctive relief including a declaratory judgment and an appropriate court order prohibiting the defendants from further deceptive acts and practices described in this complaint.

### COUNT VII

**VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT**
**N.J.S.A. § 56:8-1, *et seq.***
**(Brought on behalf of the New Jersey Subclass)**

114.    Plaintiff Emilio Rodriguez ("Plaintiff," for purposes of this Count), individually and on behalf of the other New Jersey Subclass members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth.

115.    Plaintiff brings this claim individually and on behalf of the New Jersey Subclass.

116.    Intel is a "person" under N.J. Stat. § 56:8-1(d).

117.    Plaintiff Rodriguez and the New Jersey Subclass members' purchases of defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors are "sales" under N.J. Stat. § 56:8-1(e).

118.    Defendant's practices, acts, policies and course of conduct violated the New Jersey Consumer Fraud Act, N.J. Stat. 56:8-2, et seq. ("CFA"), in that:

119.    Defendant engaged in deceptive acts and practices in or affecting commerce, through its marketing, advertisements and sale of defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors, by representing to Plaintiffs and members of the New Jersey Subclass, among other things, that the products were premium products, possessed a critical layer of protection for security of the data and device, would utilize state of the arts speed and execution when in fact it would manifest the defect:

a.    Such pattern of conduct was uniform in nature with respect to the marketing and sale of the product.

b.    Defendant also knowingly concealed, suppressed and consciously omitted material facts from Plaintiffs and other members of the members of the

– 24 –

New Jersey Subclass – such as the fact that the Affected Processors were not secure, were susceptible to the Meltdown and Spectre defects and would result in slowdowns and a decrease in system performance.

120.    Defendant's acts and omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

121.    Until the present, Defendant knowingly accepted the benefits of their deception and improper conduct in the form of profits from the increased sale of the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors

122.    As a proximate result of the above-described CFA violations, Plaintiff and members of the New Jersey Subclass: (a) purchased and used defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors when they would not otherwise have done so; (b) suffered economic losses consisting of the cost of purchase or, alternatively, the diminished value of the defective Intel Affected Processors or Affected Devices; (c) suffered and/or will suffer additional economic losses in purchasing another computer or device and/or out of pocket repair costs; and (d) suffered and will suffer additional economic losses incidental to the Intel CPU Chip defect.

123.    As a direct and proximate result of these deceptive commercial practices, alleged herein, Plaintiff and the members of the New Jersey Subclass have suffered ascertainable losses and have been damaged and are entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

124.    Plaintiff and New Jersey Subclass members also seek appropriate equitable relief, including an order requiring Intel to adequately disclose and remediate the defect plaguing its microprocessor Affected Processors, and an order enjoining Intel from incorporating the defect into its microprocessor chips in the future. Plaintiff and the New Jersey Subclass also seek attorneys' fees and any other just and proper relief available under the New Jersey CFA

1

**COUNT VIII**

2

3

4

**VIOLATION OF THE NORTH CAROLINA
CONSUMER PROTECTION ACT
N.C. Gen. Stat. § 75-1.1, *et seq*.
(Brought on behalf of North Carolina Subclass)**

5        125.    Plaintiff Courtney Hill ("Plaintiff," for purposes of this Count), individually and on

6    behalf of the other North Carolina Subclass members, repeats and alleges the allegations contained

7    in the preceding paragraphs as if fully set forth herein.

8        126.    Plaintiff brings this claim individually and on behalf of the North Carolina Subclass

9    members.

10        127.    Plaintiff and the members of the North Carolina Subclass are consumers who

11    purchased defective Intel microprocessor Affected Processors and/or Affected Devices with

12    defective Intel Affected Processors, which are consumer goods.

13        128.    Plaintiff and the members of the North Carolina Subclass are entitled to the

14    protections of the Consumer Protection Act, N.C. Gen. Stat. § 75-1.1, et. seq. (the "Act") and may

15    recover damages pursuant to the provisions of the Act.

16        129.    N.C. Gen. Stat. § 75-1.1 makes unlawful "[u]nfair methods of competition in or

17    affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

18        130.    Defendant engaged in unfair methods of competition in or affecting commerce, and

19    unfair or deceptive acts and/or practices in or affecting commerce, through their advertisements

20    and sale of defective Intel microprocessor Affected Processors and/or Affected Devices with

21    defective Intel Affected Processors, by representing to Plaintiff and members of the North

22    Carolina Subclass that the products were premium products, possessed a critical layer of

23    protection for security, would utilize state of the art speed and execution. Defendant also

24    concealed and omitted to inform Plaintiff and the North Carolina Subclass members that the

25    defective Intel Affected Processors were subject to security flaws, could result in compromise of

26    security of the data on the Affected Devices due to Meltdown and Spectre and would be subject to

27    slowdowns and a decrease in system performance.

28

– 26 –

131.    Defendant also knowingly concealed, suppressed and consciously omitted material facts from Plaintiff and members of the North Carolina Subclass knowing that consumers would rely on the statements and Defendant's uniform representations concerning its defective microprocessor Affected Processors and/or the promised benefits of the Intel Affected Processors in purchasing and/or updating with the patch their affected microprocessors and/or devices.

132.    Defendant's acts and omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

133.    Defendant's acts and omissions were and are unfair because they offend established public policy.

134.    Defendant's acts and omissions were and are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

135.    Defendant's acts and omissions were and are unfair because they amount to an inequitable assertion of their power or position.

136.    Until the present, Defendant knowingly accepted the benefits of their deception and improper conduct in the form of profits from the increased sale of the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors.

137.    As a proximate result of the above-described Consumer Protection Act violations, Plaintiff and members of the North Carolina Subclass: (a) purchased and used the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors when they would not otherwise have done so; (b) suffered economic losses consisting of the cost of purchase or, alternatively, the diminished value of the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors; (c) suffered and/or will suffer additional economic losses in purchasing another computer or device and/or out of pocket repair costs; and (d) suffered and will suffer additional economic losses incidental to the Intel CPU Chip defect.

138.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff and the members of the North Carolina Subclass have been

– 27 –

damaged in an amount in excess of $10,000, and are entitled under N .C. Gen. Stat. § 75-16 to recover treble damages as well as attorneys' fees and costs.

## COUNT IX

### VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT ("MCPA") FOR DECEPTIVE TRADE PRACTICES
### Michigan Comp. Laws Ann. § 445.903, *et seq.*
### (Brought on behalf of Michigan Subclass)

139.    Plaintiff Cassandra Payne ("Plaintiff," for purposes of this Count), individually and on behalf of the other Michigan Subclass members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

140.    Plaintiff asserts this cause of action on behalf of herself and the Michigan Subclass under the "deceptive conduct" branch of the MCPA.

141.    At all relevant times hereto, Defendant was a "person" engaged in "trade or commerce" within the meaning of MCPA, M.C.L.A. § 445.902(1)(d) and (g).

142.    Defendant's practices, acts, policies, and course of conduct, including its omissions described above, were intended to induce, and did induce, Plaintiff and members of the Michigan Subclass, to purchase defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors.

143.    Defendant sold the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors while knowingly concealing that they contained the defects alleged above.

144.    Acts by Defendant are and were deceptive acts or practices which are and/or were, likely to mislead a reasonable consumer purchasing the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors. The aforementioned deceptive acts and practices are material, in part, because they concern an essential facet of the defective Intel microprocessor Affected Processors and/or Affected Devices' functionality, safety and security.

145.    Defendant's practices, acts, policies and course of conduct violated the MCPA, M.C.L.A. § 445.902(1) in that:

– 28 –

a.  At the time of sale, Defendant knowingly misrepresented and intentionally omitted and concealed material information regarding the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors by failing to disclose to Plaintiff and the Michigan Subclass members, the known defects in the microprocessor Affected Processors, that the defective Intel Affected Processors were subject to security flaws, could result in compromise of security of the data on the Affected Devices due to Meltdown and Spectre and the known risks associated therewith and would be subject to slowdowns and a decrease in system performance.

b.  Thereafter, Defendant failed to disclose the defects to Plaintiff Payne, in addition to the Michigan Subclass members, either through warnings or recall notices, and/or actively concealed from them the fact that the microprocessor Affected Processors were defective, even though Intel knew of such defects.

c.  Defendant forced Plaintiff Payne and the Michigan Subclass members, to expend sums of money to repair and/or replace the defective microprocessor Affected Processors, despite Defendant's prior knowledge of the defects at the time of purchase.

146.    The aforementioned conduct is and was deceptive and false and constitutes an unconscionable and deceptive act or practice in that Defendant has, through knowing, intentional, and material omissions, concealed the true defective nature of the Intel microprocessor Affected Processors.

147.    In making these misrepresentations of fact and/or material omissions to prospective customers while knowing such representations to be false, Defendant has misrepresented and/or knowingly and intentionally concealed material facts in breach of its duty not to do so.

148.    Members of the public reasonably relied on Defendant's misrepresentations as to the quality and characteristics of the defective Intel microprocessor Affected Processors and/or

– 29 –

Affected Devices with defective Intel Affected Processors, were deceived by Defendant's failure to disclose, and could not discover the defect themselves before suffering their injuries.

149.    As a direct and proximate result of these unconscionable and deceptive acts or practices, Plaintiff and Michigan Subclass Members have been damaged because they: purchased the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors they otherwise would not have purchased, paid more for the defective Intel microprocessor Affected Processors and/or Affected Devices than they otherwise would have paid, paid for the defective Intel microprocessor Affected Processors and/or Affected Devices' diagnoses, repairs, and replacements, and are left with devices of diminished value and utility because of the defect. Meanwhile, Intel sold more the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors than it otherwise could and charged inflated prices therefor, thereby unjustly enriching itself.

150.    Plaintiff and the Michigan Subclass Members, seek restitution of the substantial sums of money they expended, including to replace their Affected Devices defective Affected Processors and/or updated the patch which caused significant slowdowns and reduced performance of their devices.

151.    Intel committed these and other unfair and deceptive acts in connection with the marketing and sale of its defective microprocessor Affected Processors and/or Affected Devices with said Affected Processors. Intel is liable to Plaintiff Payne and the other Michigan Subclass members for monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiff and each Subclass Member. Plaintiff Payne and the Michigan Subclass members also seek reasonable attorneys' fees and equitable relief, including an order requiring Intel to adequately disclose, replace and remediate the defect and enjoining Intel from incorporating the defective Affected Processors into its future microprocessor Affected Processors in the future, as well as any other just and proper relief available under the Mich. Comp. L. Ann. § 445.911.

**COUNT X**

**VIOLATION OF THE MCPA**
**FOR UNFAIR TRADE PRACTICES**
**Michigan Comp. Laws Ann. § 445.903, *et seq*.**
**(Brought on behalf of Michigan Subclass)**

152.    Plaintiffs Cassandra Payne ("Plaintiff," for purposes of this Count), individually and on behalf of the other Michigan Subclass members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

153.    Plaintiff Payne asserts this cause of action on behalf of herself and the Michigan Subclass under the "unfair conduct" branch of the MCPA.

154.    At all relevant times hereto, Defendant was a "person" engaged in "trade or commerce" within the meaning of MCPA, M.C.L.A. § 445.902(1)(d) and (g).

155.    Defendant's practices, acts, policies, and course of conduct, including its omissions described above, constitute unfair conduct because they (1) offend public policy; (2) are immoral, unethical, oppressive and unscrupulous; and (3) cause substantial injury to consumers in violation of the MCPA.

156.    Defendant marketed and sold the defective Intel microprocessor Affected Processors, and/or Affected Devices with defective Intel Affected Processors, while knowing that they contained the defects alleged above.

157.    Acts by Defendant are and were unfair to a reasonable consumer purchasing the defective Intel microprocessor Affected Processors, and/or Affected Devices with defective Intel Affected Processors. The unfair acts and practices are material, in part, because they concern an essential facet of the microprocessor Affected Processors and/or Affected Devices' functionality and safety.

158.    Defendant's practices, acts, policies and course of conduct violated the MCPA, M.C.L.A. § 445.902(1) in that:

        a.    At the time of sale, Defendant omitted material information regarding the defective Intel microprocessor Affected Processors, and/or Affected Devices with defective Intel Affected Processors, by failing to disclose to

– 31 –

Plaintiff Payne and the Michigan Subclass members, the known material information regarding the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors, including that the defective Intel Affected Processors were subject to security flaws, could result in compromise of security of the data on the Affected Devices due to Meltdown and Spectre and the known risks associated therewith and would be subject to slowdowns and a decrease in system performance.

b.    Thereafter, Defendant failed to disclose the defects to Plaintiff Payne, in addition to the Michigan Subclass members, either through warnings or recall notices, and/or actively concealed from them the fact that the microprocessor Affected Processors were defective, even though Intel knew of such defects.

c.    Defendant forced Plaintiff Payne and the Michigan Subclass members, to expend sums of money to repair and/or replace the defective microprocessor Affected Processors, despite Defendant's prior knowledge of the defects at the time of purchase

159.    The aforementioned conduct is and was unfair in that Defendant has failed to disclose the true defective nature of the defective Intel microprocessor Affected Processors, and/or Affected Devices with defective Intel Affected Processors.

160.    In making these material omissions to prospective customers while knowing such representations to be false, Defendant has omitted material facts in breach of its duty not to do so.

161.    Members of the public reasonably relied on Defendant's representations as to the quality and characteristics of the defective Intel microprocessor Affected Processors, and/or Affected Devices with defective Intel Affected Processors and could not discover the defect themselves before suffering their injuries.

162.    As a direct and proximate result of these unconscionable and deceptive acts or practices, Plaintiff Payne and Michigan Subclass members have been damaged because they:

– 32 –

purchased the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors they otherwise would not have purchased, paid more for the defective Intel microprocessor Affected Processors and/or Affected Devices than they otherwise would have paid, paid for the defective Intel microprocessor Affected Processors and/or Affected Devices' diagnoses, repairs, and replacements, and are left with devices of diminished value and utility because of the defect. Meanwhile, Intel sold more the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors than it otherwise could and charged inflated prices therefor, thereby unjustly enriching itself.

163.    Plaintiff Payne and the Michigan Subclass members, seek restitution of the substantial sums of money they expended, including to replace their Affected Devices defective Affected Processors and/or updated the patch which caused significant slowdowns and reduced performance of their devices.

164.    Intel committed these and other unfair and deceptive acts in connection with the marketing and sale of its defective microprocessor Affected Processors and/or Affected Devices with said Affected Processors. Intel is liable to Plaintiff Payne and the other Michigan Subclass members for monetary relief measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Plaintiff and each Subclass Member. Plaintiff Payne and the Michigan Subclass members also seek reasonable attorneys' fees and equitable relief, including an order requiring Intel to adequately disclose, replace and remediate the defect and enjoining Intel from incorporating the defective Affected Processors into its future microprocessor Affected Processors in the future, as well as any other just and proper relief available under the Mich. Comp. L. Ann. § 445.911.

## COUNT XI

### VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT,
**6 Del. Code §§ 2513, *et seq*.**
**(Asserted by the Delaware Subclass)**

165.    Plaintiff Bruce Bodofky ("Plaintiff," for purposes of this Count), hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

– 33 –

166. Intel operating in Delaware used and employed deception, fraud, misrepresentation, and the concealment, suppression, and omission of material facts with intent that others rely upon such concealment, suppression and omission, in connection with the sale and advertisement of goods and services, in violation of 6 Del. Code § 2513(a). This includes but is not limited to the following:

    a. At the time of sale, Defendant omitted material information regarding the defective Intel microprocessor Affected Processors, and/or Affected Devices with defective Intel Affected Processors, by failing to disclose to Plaintiff and the Delaware Subclass Members, the known material information regarding the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors, including that the defective Intel Affected Processors were subject to security flaws, could result in compromise of security of the data on the Affected Devices due to Meltdown and Spectre and the known risks associated therewith and would be subject to slowdowns and a decrease in system performance.

    b. Thereafter, Defendant failed to disclose the defects to Plaintiff and the Delaware Subclass Members, either through warnings or recall notices, and/or actively concealed from them the fact that the microprocessor Affected Processors were defective, even though Intel knew of such defects.

    c. Defendant forced Plaintiff and the Delaware Subclass Members, to expend sums of money to repair and/or replace the defective microprocessor Affected Processors, despite Defendant's prior knowledge of the defects at the time of purchase. Knowingly and fraudulently misrepresenting that it would maintain adequate data privacy and security practices and procedures to safeguard the Delaware Subclass Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

– 34 –

    d.    Knowingly omitting, suppressing, and concealing the inadequacy of its privacy and security protections for Plaintiff and the Delaware Subclass Members' data.

167.    As a direct and proximate result of Intel's practices, Plaintiff and the Delaware Subclass members suffered the injury and/or damages described herein, including but not limited to time and expenses related to monitoring the security of their Affected Devices and personal data, and increased risk of fraud and identity theft, and loss of value of their personal data, repair and replacement of their defective Intel microprocessor Affected Processors and paying a premium price of the Intel Affected Processors which they would not have paid had they known of the true facts concealed by Defendant.

168.    The above unfair and deceptive practices and acts by Intel were immoral, unethical, oppressive, and unscrupulous. The acts caused substantial injury to Plaintiff and the Delaware Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

169.    Intel knew or should have known that its defective Affected Processors and the Affected Devices containing them, had security flaws which were inadequate to safeguard the Delaware Subclass members personal data and that the risk of a data breach or theft was high. Intel's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Delaware Subclass.

170.    Plaintiff and Delaware Subclass members seek damages under 6 Del. Code § 2525 for injury resulting from the direct and natural consequences of Intel's unlawful conduct, in an amount to be proven at trial. *See also Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983).

171.    Plaintiff and Delaware Subclass members also seek an order enjoining Intel's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees pursuant to 6 Del. Code §§ 2513, et seq.

– 35 –

**COUNT XII**

**VIRGINIA CONSUMER PROTECTION ACT,**
**Va. Code Ann. §§ 59.1-196, *et seq.***
**(Asserted by the Virginia Subclass)**

172.    Plaintiff George Lett ("Plaintiff," for purposes of this Count), individually and on behalf of the other Virginia Subclass members, hereby incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

173.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

174.    Intel operating in Virginia engaged in deceptive trade practices in connection with consumer transactions, including by representing that its goods and services had characteristics that they did not have, representing that its products were of a particular standard or quality when they were not, and advertising its products with intent not to sell them as advertised, in violation of Va. Code Ann. § 59.1-200. This includes but is not limited to the following:

      a.    At the time of sale, Defendant omitted material information regarding the defective Intel microprocessor Affected Processors, and/or Affected Devices with defective Intel Affected Processors, by failing to disclose to Plaintiff and the Virginia Subclass Members, the known material information regarding the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors, including that the defective Intel Affected Processors were subject to security flaws, could result in compromise of security of the data on the Affected Devices due to Meltdown and Spectre and the known risks associated therewith and would be subject to slowdowns and a decrease in system performance.

      b.    Thereafter, Defendant failed to disclose the defects to Plaintiff and the Virginia Subclass Members, either through warnings or recall notices,

– 36 –

and/or actively concealed from them the fact that the microprocessor Affected Processors were defective, even though Intel knew of such defects.

c.     Defendant forced Plaintiff and the Virginia Subclass Members, to expend sums of money to repair and/or replace the defective microprocessor Affected Processors, despite Defendant's prior knowledge of the defects at the time of purchase. Knowingly and fraudulently misrepresenting that it would maintain adequate data privacy and security practices and procedures to safeguard the Delaware Subclass Members' Personal Information from unauthorized disclosure, release, data breaches, and theft;

d.     Knowingly omitting, suppressing, and concealing the inadequacy of its privacy and security protections for Plaintiff and the Virginia Subclass Members' data.

175.     As a direct and proximate result of Intel's practices, Virginia Subclass members suffered injury and/or damages, including but not limited to time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personal data.

176.     The above unfair and deceptive acts and practices by Intel were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Virginia Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

177.     Intel knew or should have known that its defective microprocessor Affected Processors and the Affected Devices containing them, had security flaws which were inadequate to safeguard the Virginia Subclass members personal data and that the risk of a data breach or theft was high. Intel's actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the Virginia Subclass.

178.     Plaintiff and Virginia Subclass members seek all available relief under Va. Code Ann. § 59.1-204, including, but not limited to, actual damages, statutory damages and/or penalties

– 37 –

in the amount of $1,000 per violation or, in the alternative, $500 per violation, restitution, injunctive relief, punitive damages, and attorneys' fees and costs

## COUNT XIII

**VIOLATION OF THE FLORIDA DECEPTIVE AND
UNFAIR TRADE PRACTICES ACT ("FDUTPA")
Fla. Stat. §§ 501.201, *et seq.*
(Brought on behalf of the Florida Subclass)**

179.    Plaintiff Glenda Dillon ("Plaintiff," for purposes of this Count), individually and on behalf of the other Florida Subclass members, repeats and alleges the allegations contained in the preceding paragraphs as if fully set forth herein.

180.    Plaintiff brings this claim individually and on behalf of the Florida Subclass members.

181.    Plaintiff and class members who purchased the defective Intel Affected Processors and/or Affected Devices with the defective Intel Affected Processors are "consumers" under the FDUTPA.

182.    Defendant's practices, acts, policies and course of conduct violated FDUTPA in that:

  a.    At the time of sale, Defendant omitted material information regarding the defective Intel microprocessor Affected Processors, and/or Affected Devices with defective Intel Affected Processors, by failing to disclose to Plaintiff and the Florida Subclass Members, the known material information regarding the defective Intel microprocessor Affected Processors and/or Affected Devices with defective Intel Affected Processors, including that the defective Intel Affected Processors were subject to security flaws, could result in compromise of security of the data on the Affected Devices due to Meltdown and Spectre and the known risks associated therewith and would be subject to slowdowns and a decrease in system performance.

  b.    Thereafter, Defendant failed to disclose the defects to Plaintiff, and the Florida Subclass Members, either through warnings or recall notices, and/or

– 38 –

actively concealed from them the fact that the microprocessor Affected Processors were defective, even though Intel knew of such defects.

c.   Defendant forced Plaintiff and the Florida Subclass Members, to expend sums of money to repair and/or replace the defective Affected Processors, despite Defendant's prior knowledge of the defects at the time of purchase.

183.   Defendant's acts and omissions possessed the tendency or capacity to mislead or create the likelihood of deception and or unfair trade practices.

184.   Intel committed these and other unfair and deceptive acts in connection with the marketing and sale of its defective Affected Processors and/or Affected Devices with said Affected Processors. Intel is liable to Plaintiff and the other Florida Subclass members for monetary relief in an amount to be determined at trial. Plaintiff and the Florida Subclass members also seek reasonable attorneys' fees and equitable relief, including an order requiring Intel to adequately disclose, replace and remediate the defect and enjoining Intel from incorporating the defective Affected Processors into its future Affected Processors in the future, as well as any other just and proper relief available under the FDUTPA.

185.   Until the present, Defendant knowingly accepted the benefits of their deception and improper conduct in the form of profits from the increased sale of the Intel Affected Processors and/or Affected Devices which contained the Intel Affected Processors and/or Affected Devices in which the branding of Intel Affected Processors was prominently displayed as containing a premium product which operated with a speed in excess of competitive products.

186.   As a direct and proximate result of Intel's practices, Plaintiff and the Florida Subclass members suffered the injury and/or damages described herein, including but not limited to time and expenses related to monitoring the security of their Affected Devices and personal data, and increased risk of fraud and identity theft, and loss of value of their personal data, repair and replacement of their defective Intel Affected Processors and paying a premium price of the Intel Affected Processors which they would not have paid had they known of the true facts concealed by Defendant.

– 39 –

187.    The above unfair and deceptive practices and acts by Intel were immoral, unethical, oppressive, and unscrupulous. The acts caused substantial injury to Plaintiff and the Florida Subclass members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

188.    Plaintiff and Florida Subclass members also seek appropriate equitable relief, including an order requiring Intel to adequately disclose and remediate the defect plaguing its Affected Processors, and an order enjoining Intel from incorporating the defect into computers and devices in the future. Plaintiff and the Florida Subclass members also seek attorneys' fees and any other just and proper relief available under FDUTPA.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all members of the proposed classes in this Complaint, respectfully requests that the Court enter judgment in their favor and against Intel as follows:

A.    For an Order certifying the Class and/or Subclasses, as defined herein, and appointing Plaintiffs and their Counsel to represent the Nationwide Class, and/or the separate Statewide Subclasses;

B.    For an award of damages, as allowed by law in an amount to be determined;

C.    For an award of attorneys' fees costs and litigation expenses, as allowable by law;

D.    For prejudgment interest on all amounts awarded; and

E.    Such other and further relief as this court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


**STULL, STULL & BRODY**

Dated: March 6, 2018                    By:    */s/ Patrice L. Bishop*
                                                    Patrice L. Bishop
                                                    9430 West Olympic Blvd., Suite 400
                                                    Beverly Hills, CA 90212
                                                    Tel:    (310) 209-2468
                                                    Fax:    (310) 209-2087
                                                    Email:  pbishop@ssbla.com

– 40 –

1

2    Melissa R. Emert
     **STULL, STULL & BRODY**
3    6 East 45th Street
     New York, NY 10017
4    Tel:    (212) 687-7230
     Fax:    (212) 490-2022
     Email: memert@ssbny.com

5
     Gary S. Graifman
6    Jay Brody
     **KANTROWITZ GOLDHAMER &**
7            **GRAIFMAN, P.C.**
     747 Chestnut Ridge Road
8    Chestnut Ridge, New York 10977
     Tel:    (845) 356-2570
9    Fax:    (845) 356-4335
     Email: ggraifman@kgglaw.com
              jbrody@kgglaw.com

10
     Nicholas A. Migliaccio
11   Jason S. Rathod
     **MIGLIACCIO & RATHOD LLP**
12   412 H Street N.E., Ste. 302
     Washington, DC 20002
13   Tel:    (202) 470-3520
     Email: nmigliaccio@classlawdc.com
14            jrathos@classlawdc.com

15   *Counsel for Plaintiffs*

16

17

18

19

20

21

22

23

24

25

26

27

28

– 41 –